### KINNEY et al. v. MANITOWOC COUNTY, WIS.

(Circuit Court of Appeals, Seventh Circuit. January 10, 1905.)

No. 1,083.

1. COUNTY BOARD—COMMITTEES—AUTHORITY—CONTRACTS.

Where a county board empowered a committee to investigate and report regarding "the best manner of raising funds" for the construction of a new courthouse, and to make recommendations, and a report in writing, together with plans and specifications, on or before a specified date, such committee had no authority to decide to build the courthouse, nor to employ architects to prepare "working plans and specifications," but only preliminary plans and specifications for the information of the board.

2. SAME—PERFORMANCE OF AUTHORITY.

Where a resolution of a county board appointed a committee to procure plans for a courthouse at a cost not exceeding $100,000, the committee had no authority to contract with architects for plans for a courthouse costing $100,000, "exclusive of heating and plumbing."

3. SAME—EXTENSION OF TIME.

Where a resolution of a county board for the construction of a courthouse empowered a committee to prepare and submit plans by April 1, 1903, the committee had no authority to extend the time within which architects contracted with might prepare plans for submission to April 21, 1903.

4. SAME—CONTRACT—PERFORMANCE.

Where plaintiffs alleged that they contracted to furnish seven sets of working plans for the construction of a courthouse, other than preliminary plans and specifications which architects furnish gratuitously, and only four sets of plans and specifications were furnished, which in twenty different particulars failed to give such detailed drawings and specifications as were required for a builder's guidance, without plans for heating, lighting, or plumbing, and plaintiffs only claimed that the plans furnished were sufficient to enable a contractor to bid on the building, there was no performance of the contract sufficient to entitle plaintiffs to recover thereon.

5. SAME—QUANTUM VALEBAT.

Where plaintiffs contracted to furnish working plans and specifications for a courthouse, but they were not entitled to recover on the contract, both by reason of its invalidity and for their failure to perform, they could not recover the value of the use of plans and specifications furnished, which were not used except to enable the county board to abandon the project of erecting the building, in the absence of proof of the value of such use.

6. SAME—CONTRACT PRICE.

The contract price for such plans was no evidence of the fair value of the use made of the plans so furnished.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

· At the conclusion of the evidence offered by plaintiffs in error in support of the two counts of their declaration, the court directed the jury to return a verdict for the defendant.

The first count set forth that on March 7, 1903, the parties entered into a written contract whereby the plaintiffs agreed to furnish the defendant seven sets of plans, specifications, and detailed drawings for a courthouse building to-be erected at Manitowoc, Manitowoc county, Wis., and the defendant agreed to pay the plaintiffs therefor $3,500 on or before June 5, 1903.; that the plaintiffs performed their part of the contract, and that the defendant accepted their plans, specifications, and detailed drawings, but failed and refused to pay.

The second count averred that the defendant was empowered by the statutes of the state to construct and maintain a courthouse; that to exercise such power it is convenient and reasonably necessary that plans, specifications, and detailed drawings be provided; that plaintiffs, at the special instance and request of the defendant, through its county board, furnished to the defendant plans, specifications, and detailed drawings, which the defendant accepted, retained, and used; that the defendant failed and refused to pay therefor; and that the true and fair value thereof was $3,500.

The evidence was this:
On November 18, 1902, the county board adopted the following resolution: "Whereas, the courthouse of Manitowoc county is old, inconvenient and unsanitary; and

"Whereas, the vaults of the various county offices are crowded and inconvenient on account of lack of space; and

"Whereas, the interests of the people of Manitowoc county demand better and more convenient county offices. Now, therefore,

"Be it resolved, by the county board of supervisors of Manitowoc county, that it is the sense of this board that said county should immediately proceed to the erection of a more commodious and convenient courthouse, at a cost not exceeding one hundred thousand dollars ($100,000); be it

"Further resolved, that the chairman of said board be and he hereby is directed to appoint a committee of five members from said board to procure plans and specifications of a suitable courthouse for Manitowoc county, and to investigate and report as to what would be the best manner of raising funds wherewith to erect a new courthouse, and to make such further recommendations relative to the matter of erecting a courthouse building as they may deem of value to the county board of supervisors of said county; be it

"Further resolved, that said committee make and file its report in writing, together with plans and specifications, with the county clerk of said county, on or before the 1st day of April, 1903."

The special committee of five was appointed, and, after examining several preliminary plans and specifications submitted by various architects, they entered into the following contract with the plaintiffs: "This agreement, made the 7th day of March, 1903, between Kinney & Detweiler, architects, of Minneapolis, Minnesota, parties of the first part, and the committee on plans and specifications as appointed by the county board of supervisors of Manitowoc County, Wis., as per resolution adopted by the board of county supervisors of Manitowoc County, Nov. 18th, 1902, party of the second part,

"Witnesseth: That the said parties of the first part, for and in consideration of the covenants and agreements hereinafter contained and agreed to be performed by and on the part of said party of the second part, hereby covenant, contract, promise and agree to furnish and provide seven sets of plans and specifications and detail drawings for a courthouse building, to be erected at Manitowoc, Manitowoc County, Wis., on lots 1, 2, 3, 4, 9, 10, 11 and 12 in block No. 273, and agree to have plans and specifications completed on or before April 21, 1903.

"The party of the second part will, upon the full and complete and faithful performance of the said parties of the first part, of all the covenants and agreements hereinbefore contained and by them agreed to be performed, pay

to said parties of the first part a commission of 3½ per cent on all plans and specifications for the said courthouse building furnished by the said parties of the first part.

"Said 3½ per cent shall be based on a building costing $100,000.00 not includ-. ing any fixtures, that is, heating or plumbing in building. Said 3½ per cent commission shall be paid by the County of Manitowoc on or before June 5th, 1903. It is also further agreed upon by the party of the second part, should the cost of building upon the letting of contract go beyond the $100,000.00, then the parties of the first part are to receive their 3½ per cent commission on all work as contracted for under their plans and specifications. Said payments of percentage are to become due when contracts are let."

The county board did not meet until May 18, 1903. At that time the special committee submitted two reports. In the first, dated March 25, 1903, they stated that they would have no plans nor recommendations ready to submit on April 1, 1903, the day fixed in the board's resolution, but at some later date would be ready. In the second, dated May 14, 1903, they reported their actions fully, and recommended that the plans and specifications prepared by plaintiffs be accepted and adopted.

On May 22, 1903, plaintiff Kinney addressed the board regarding his plans and specifications. On that day, by a resolution duly adopted, the board indefinitely postponed action on the reports of the special committee, and rejected plaintiffs' plans and specifications without giving any reasons therefor. At the same time the board assigned to another committee the duty of collecting information respecting a courthouse, the cost of which should not exceed $150,000. This committee thought more ground was needed, and thereupon the whole matter of building a new courthouse was dropped.

Plaintiff Kinney was the only witness examined. He read the resolution of November 18, 1902, before making the contract of March 7, 1903. He furnished only four sets of plans and specifications. In twenty different particulars there was a failure to give such detailed drawings and specifications as are required for a builder's guidance. He claimed, however, that what he did submit was sufficient to enable a contractor to bid on the building. His plans did not include heating, lighting, or plumbing; but contained provisions for a heating plant in the basement, and spaces for closets in various parts of the building. In his opinion, "bids could be received under said plans and specifications at $100,000, exclusive of heating, plumbing, lighting, ventilation, and waterworks fixtures." He thought bids should run from $90,000 to $130,000 for the building exclusive of the items aforesaid, which items would cost $15,000 additional. Bids of contractors usually do not vary more than from 10 per cent. lower to 10 per cent. higher than the architect's estimate. Sketches or preliminary plans, accompanied by a preliminary specification giving a description of the building, the materials to be used, and the main features of the construction, are called plans both by architects and laymen. Such plans are usually furnished without charge.

A. L. Sanborn, for plaintiffs in error.

A. L. Hougen, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after stating the facts, delivered the opinion of the court.

1. The first count was not sustained by the evidence.

The county is a territorial subdivision of the state. As a municipal corporation, it is an involuntary one, created by the Legislature without regard to the will of the inhabitants, who constitute the corporation, and whose property, through taxation, is liable for the debts of the corporation. It is right, therefore, that the debt-making power be limited to action taken by the county board in lawful session, or to action of a committee of the board taken in pursuance of a resolution or ordinance of the board adopted in lawful session.

The board, by its resolution, did not lay upon the special committee the duty of building a courthouse. The resolution, as a whole, shows that the board believed a new courthouse desirable, and that a committee should investigate and report regarding "the best manner of raising funds," and should submit "recommendations relative to the matter of erecting a courthouse"; but the decision to build or not to build was clearly with the board. Now, what meaning, in connection with the committee's duty to investigate the building question and the matter of funds and to submit their recommendations, should be assigned to the words "procure plans and specifications"? If the committee had been authorized to go ahead and erect a courthouse, undoubtedly the words would have justified them in engaging architects to furnish complete, detailed working plans and specifications. But when the board reserved to themselves the decision to build or not, as they might think best, after hearing the report of their committee, what right had the committee and the plaintiffs to suppose that the board were ordering working plans? The selection of an architect to furnish working plans means that the competition between architects on their preliminary plans is at an end. The builder—in this case the board—wants to see the competitive preliminary plans, and, after he has decided to go ahead, it is time enough to procure the working plans. To hold that the board intended that the committee should procure working plans is to convict the board of the foolish extravagance of ordering working plans without knowing whether they would want the work done. We think the words "plans and specifications" in the resolution meant and were intended to mean the preliminary plans and preliminary specifications described in Kinney's testimony—a meaning in which the words, in a proper context, are commonly taken by architects and laymen alike. The contract sued upon, being for working plans, was beyond the power of the committee to make. Compare with French v. Dunn County, 58 Wis. 402, 17 N. W. 1, where the committee acted strictly within the letter of the board's resolution.

The resolution recognizes the desirability of a new courthouse at a cost not exceeding $100,000. The contract calls for plans for a building to cost $100,000, exclusive of heating and plumbing. Thus the contract makes an exception that is not named in the resolution. And the plans themselves indicate that the courthouse would not be a finished structure without the inclusion of the heating and plumbing appliances. Why should a great stack be built unless the heating plant was to be installed, for which room was made in the basement? If a complete building without the heating plant was intended, why were not chimneys for stoves provided in each room? If plaintiffs intended a building complete without plumbing, and if they did not expect the plumbing to be built into and with the building, why did they provide rooms on the various floors, which would stand unfinished and useless unless the plumbing was installed? We believe, therefore, that plaintiffs understood that the board had in mind in their resolution a courthouse that should include the heating, lighting, and plumbing appliances that are cus-

tomarily built into a courthouse at this day. But, if plaintiffs did not actually so understand the resolution, they should have done so, for that is its meaning. Turney v. Town of Bridgeport, 55 Conn. 412, 12 Atl. 520. The contract sued upon, being for plans for a courthouse which would cost materially more than $100,000 to finish, was beyond the power of the committee to make.

The resolution required the committee to file their report of recommendations and plans by April 1st. They could not enlarge their own commission. The contract extending the time for plaintiffs to prepare plans to April 21st was beyond the power of the committee to make.

Plaintiffs did not perform their part of the contract. If plaintiffs furnished something more than the preliminary plans and specifications which architects provide gratuitously in the hope of being engaged to make the working plans, they confessedly failed to deliver plans from which a builder could erect a courthouse.

2. The evidence fails to support the second count.

The plans were not accepted. They were not used in erecting a building. No use of them by the board is shown. If individual members learned therefrom anything respecting the character and cost of a suitable courthouse for Manitowoc county, there is no evidence that the county, through the board, received and used any such information.

But, furthermore, there is an absolute want of proof of the fair value of any use made of the plans, if the county could be charged with the use above mentioned. The $3,500 stated in the contract is no evidence of the fair value of such use. The $3,500 was the agreed price for complete, detailed working plans and specifications. Such were neither furnished nor used.

The judgment is affirmed.